UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00028-GNS-HBB

JOANIE MARIE FRAZIER                                                    PLAINTIFF

v.

CHRIS TRULOCK;
LARRY DALE MARTIN, II;
SEAN HENRY;
HORSE CAVE POLICE DEPARTMENT;
RANDALL CURRY; and
CITY OF HORSE CAVE, KENTUCKY                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Chris Trulock and Sean Henry's Motion for

Summary Judgment (DN 18) and Plaintiff's Motion to Amend Response to Defendants' Motion

for Summary Judgment (DN 24).  The motions are now ripe for adjudication.  For the reasons that

follow, Plaintiff's motion to amend (DN 24) is **GRANTED** and Defendants' motion for summary

judgment is (DN 18) **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

Plaintiff Joanie Marie Frazier ("Frazier") asserts several causes of action against, among

others, Defendants Chris Trulock ("Trulock"), an officer with the Horse Cave Police Department,

and Sean Henry ("Henry"), the Chief of the Horse Cave Police Department, both in their individual

and official capacities, for events beginning on the night of February 18, 2018.  (Notice Removal

Ex. 1, at 1-4, DN 1-2).[1]  On that night, Frazier heard a knock on her door and, after looking through

---

[1] Defendants Trulock and Henry do not appear to contest most of the factual allegations in Frazier's
Complaint for purposes of their summary judgment motion.  (Defs.' Mem. Supp. Mot. Summ. J.
2, DN 18-1).

1

the peephole and seeing no one, cracked the door open, at which time Trulock and Henry physically shoved the door open and pushed their way past Frazier.  (Notice Removal Ex. 1, at 4).

Once inside Frazier's home, Trulock and Henry arrested Frazier's fiancé, Anthony Owens ("Owens").  (Notice Removal Ex. 1, at 4-5).  Trulock and Henry claimed to have a warrant for Owens' arrest, but they were unable to produce a warrant despite multiple requests from Frazier and Owens to do so.  (Notice Removal Ex. 1, at 5).  At some point, Frazier left the residence to seek assistance from Owens' mother, Sheila Bryant ("Bryant").  (Notice Removal Ex. 1, at 5). Frazier and Bryant returned to Frazier's residence, and Bryant called the Kentucky State Police. (Notice Removal Ex. 1, at 5).  Frazier witnessed Trulock and Henry handcuff Bryant while Frazier was recording the acts on her cell phone.  (Notice Removal Ex. 1, at 5).  After Bryant was handcuffed, Trulock grabbed Frazier's phone and destroyed the video on it.  (Notice Removal Ex. 1, at 5).  At some point later, Trulock directed that Frazier be arrested, as well, without giving a basis for her arrest.  (Notice Removal Ex. 1, at 5).

Frazier was charged with second-degree disorderly conduct, menacing, and failure to notify an address change to the Kentucky Department of Transportation.  (Notice Removal Ex. 1, at 6). Frazier alleges that Trulock and Henry lacked probable cause to arrest or charge her and had no reasonable basis to arrest and that she did not commit the crimes for which she was charged. (Notice Removal Ex. 1, at 7).  Frazier also claims that she was subject to unlawful and excessive physical force by Trulock and Henry, that her residence was illegally searched, and that Trulock and Henry intentionally damaged and destroyed her residence and personal property.  (Notice Removal Ex. 1, at 8).

Frazier asserts a variety of claims against Trulock and Henry:  (1) a 42 U.S.C. § 1983 claim for unlawful search, seizure, detention, and confinement; (2) a Section 1983 claim for a violation

2

of free speech; (3) a Section 1983 claim for excessive force; (4) a state law claim for assault; (5) a state law claim for battery; (6) a state law claim for false arrest/false imprisonment; and (7) a state law claim for negligence.  (Notice Removal Ex. 1, at 9-15).  Trulock and Henry have since moved for summary judgment on all of Frazier's claims against them in their individual and official capacities.  (Defs.' Mot. Summ. J. 1, DN 18; Defs.' Mem. Supp. Mot. Summ. J. 15-16, DN).  Plaintiff originally responded to that motion, then filed a motion for leave to file an amended response four days later and a proposed amended response.  (Pl.'s Resp. Defs.' Mot. Summ. J, DN 21; Pl.'s Mot. Leave File Am. Resp. Defs.' Mot. Summ. J., DN 24; Pl.'s Am. Resp. Defs.' Mot. Summ. J., DN 24-1).  Although Trulock and Henry have responded to the substance of Plaintiff's proposed amended response, they do not challenge the procedural validity of Plaintiff's proposed amended response.  (Defs.' Resp. Pl.'s Mot. Leave File Am. Resp. Defs.' Mot. Summ. J., DN 28).  The Court will therefore grant Plaintiff's motion and consider the substance of her amended response.  This leaves Trulock and Henry's motion for summary judgment as the only motion left for resolution.

## II.     JURISDICTION

Jurisdiction over this action is based on federal question and supplemental jurisdiction.  *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).  Federal question jurisdiction is afforded over Frazier's Section 1983 claims, while supplemental jurisdiction is afforded over her state law claims.

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a

genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the non-moving party must demonstrate that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment.  *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

Generally, when both federal and state law claims are before a federal court, a federal court is to apply federal law to the plaintiff's federal law claims and state substantive law to the plaintiff's state law claims.  *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 737, 741 (6th Cir. 1999) (citations omitted).  The parties agree that Kentucky state law forms the substantive law governing Frazier's state law claims.  (Defs.' Mem. Supp. Mot. Summ. J. 13-15; Pl.'s Am. Resp. Defs.' Mot. Summ. J. 22).

A.      **Frazier's Claims Against Trulock and Henry in their Official Capacities**

Trulock and Henry have moved to dismiss all of Frazier's claims against them in their official capacity.  (Defs.' Mem. Supp. Mot. Summ. J. 15-16).

"[F]ederal law and not state law is relevant for the purpose of characterizing a section 1983 claim."  *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (citation omitted). "Suing a government employee in his official capacity 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'"  *Baar v. Jefferson Cty. Bd. of Educ.*, 686 F. Supp. 2d 699, 705 (W.D. Ky. 2010) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  For Section 1983 purposes, Kentucky police officers are agents of the city they serve. *See Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602, at *3 (W.D. Ky. Jan. 17, 2013) (suit against Elizabethtown police officers in their official capacities "is the same as suing" the City of Elizabethtown); *see also Gibson v. City of Sturgis*, No. 4:17-CV-00021-JHM, 2017 WL 1347693, at *2 (W.D. Ky. Apr. 10, 2017) (because a police department is not an entity that may be sued, any claims asserted against it are deemed claims against the city where the police department is located).  So, any claims against Trulock and Henry in their official capacities are really suits against the City of Horse Cave.  The City of Horse Cave, Kentucky, is a defendant in this action and is a municipality subject to a Section 1983 claim.  (Notice Removal Ex. 1, at 2, DN 1-2); *see Funke*, 2013 WL 209602, at *3 (City of Elizabethtown, Kentucky, is a municipality subject to Section 1983 claims); *see also Springfield v. Kentucky*, No. 4:12-CV-P22-M, 2012 WL 2571162, at *2 (W.D. Ky. July 2, 2012) (City of Madisonville, Kentucky, is a municipality subject to Section 1983 claims).  "[W]hen a § 1983 complaint asserts a claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim."  *Thorpe ex rel. D.T. v. Breathitt Cty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky.

2013) (citing *Doe v. Claiborne Cty. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996); *Baar*, 686 F. Supp. 2d at 704). As such, Frazier's Section 1983 claims against Trulock and Henry in their official capacities will be dismissed with prejudice. *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 729 (E.D. Ky. 2002) (dismissing with prejudice duplicative claims against government officials in their official capacities).

With respect to Frazier's state law claims against Trulock and Henry in their official capacities, "state substantive law is controlling on pendent state claims raised in federal court." *Wynn v. Morgan*, 861 F. Supp. 622, 636-37 (E.D. Tenn. 1994) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Under Kentucky law, claims against government officials in their official capacities are "legally indistinguishable" from claims against the entity to which the government officials serve as an agent. *Cabinet for Health & Family Servs. v. Hicks*, No. 2009-CA-002186-MR, 2010 WL 3604161, at *3 (Ky. App. Sept. 17, 2010); *see also Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001) (official capacity claims against county employees "are in essence . . . claims against the county") (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Because Kentucky courts recognize this rule and the City of Horse Cave is a defendant in this action, "the court has the discretion to dismiss [a plaintiff's state law] official capacity claims against individuals working for th[e] government entity as duplicative." *Doe v. Durham Pub. Sch. Bd. of Educ.*, No. 1:17-CV-773, 2019 WL 331143, at *20 (M.D.N.C. Jan. 25, 2019) (citations omitted); *see also Rose v. Cty. of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (dismissing state law claims against government officials in their official capacities as duplicative). The Court will therefore exercise its discretion and dismiss with prejudice Frazier's state law claims against Trulock and Henry in their official capacities, as well.

6

**B.**     <u>**Frazier's Claims Against Trulock and Henry in their Individual Capacities**</u>

Trulock and Henry next make several arguments for dismissal of Frazier's claims against

them in their individual capacities.[2]  (Defs.' Mem. Supp. Mot. Summ. J. 2-13).

**1.**     *Stipulation-Dismissal Agreement*

For many of the claims asserted by Frazier, the existence of probable cause for her search,

seizure, and arrest could preclude the assertion of those claims.  *See, e.g.*, *Nieves v. Bartlett*, 139

S. Ct. 1715, 1726 (2019) ("The presence of probable cause should generally defeat a First

Amendment retaliatory arrest claim." (citation omitted)); *Voyticky v. Vill. of Timberlake*, 412 F.3d

669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that

the arresting officer lacked probable cause to arrest the plaintiff." (citations omitted)); *Gregory v.

City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006) ("[D]etention without probable cause is an

actionable Fourth Amendment injury under § 1983." (citations omitted)); *Hartman v. Thompson*,

No. 3:16-CV-00114-GNS-DW, 2018 WL 793440, at *12 (W.D. Ky. Feb. 7, 2018), *aff'd*, 931 F.3d

471 (6th Cir. 2019) (claim for false arrest or imprisonment under Kentucky law requires a showing

that the arrest was made without probable cause) (quoting *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky.

---

[2] Trulock and Henry first assert that Frazier's claims for "violations of Section 1983" must be dismissed because "it remains true that one cannot go into court and claim a 'violation of § 1983'— for § 1983 by itself does not protect anyone against anything."  (Defs.' Mem. Supp. Mot. Summ. J. 5-6); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).  In other words, Section 1983 "does not establish any substantive rights, but rather provides the plaintiff with a cause of action if a specific portion of the United States Constitution has been violated." *Lafferty v. Bd. of Educ. of Floyd Cty.*, 133 F. Supp. 2d 941, 944 (E.D. Ky. 2001) (citations omitted). Trulock and Henry's argument in this respect fails, however, because Frazier has identified specific constitutional provisions alleged to have been violated within the paragraphs expounding on the basis for the respective claims.  (Notice Removal Ex. 1, at 9-13).  Construing Frazier's Complaint "so as to do justice[,]" Frazier has not merely articulated a Section 1983 claim; rather, Frazier has alleged violations of specific constitutional provisions and have used Section 1983 as the vehicle for asserting those claims.  *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  Trulock and Henry's argument in this regard is without merit.

2007)).  Trulock and Henry therefore argue that the requisite probable cause to arrest and charge Frazier existed by virtue of a stipulation of probable cause contained in the order dismissing the criminal charges against Frazier.  (Defs.' Resp. Pl.'s Mot. Leave File Am. Resp. Defs.' Mot. Summ. J. 1-8; Defs.' Reply Mot. Summ. J. 4-8, DN 29).

As mentioned, Frazier was arrested and charged with second-degree disorderly conduct, failure to notify a change of address with the Department of Transportation, and menacing. (Compl. ¶ 32).  After the first two charges were merged with the menacing charge, Frazier pleaded guilty to menacing on February 19, 2018, the day after her arrest.  (Defs.' Mot. Summ. J. Ex. A, at 1-3, DN 18-2; Compl. ¶ 13; Pl.'s Am. Resp. Defs.' Mot. Summ. J. 6).  On November 18, 2019, however, Frazier's conviction was set aside by the Hart County District Court pursuant to an agreement between Frazier and the Hart County Attorney.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. C, DN 21-3).  In exchange for Frazier's admission that probable cause existed to charge her with all counts, the Hart County Attorney agreed to dismiss all of those counts with prejudice.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D, DN 21-4).  The validity of this "stipulation-dismissal agreement" is therefore a central issue in this case—if the agreement is deemed to be valid, then Frazier's claims predicated on the non-existence of probable cause will fail.

The parties appear to agree that the stipulation-dismissal agreements should be analyzed under the *Rumery-Coughlen* framework.[3]  (Pl.'s Am. Resp. Defs.' Mot. Summ. J. 7; Defs.' Resp.

---

[3] It is unclear whether the *Rumery-Coughlen* framework, which applies to release-dismissal agreements, even applies to the more limited stipulation-dismissal agreements at issue here.  The Sixth Circuit has declined to answer this question.  *See Grise v. Allen*, 714 F. App'x 489, 497 n.5 (6th Cir. 2017) ("Still another issue left off the table—and thus one we do not consider today—is whether the Sixth Circuit's rule in *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), applies in this context [i.e., to stipulation-dismissal agreements]."); *compare Jenkins v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:17-CV-151-DJH, 2018 WL 345119, at *5 (W.D. Ky. Jan. 9, 2018) (declining to extend the *Rumery-Coughlen* framework to stipulations of probable cause), *with Phat's Bar & Grill, LLC v. Louisville Jefferson Cty. Metro Gov't*, No. 3:10-CV-00491-JGH, 2013 WL 275542,

Pl.'s Mot. Leave File Am. Resp. Defs.' Mot. Summ. J. 4-5).  In *Town of Newton v. Rumery*, 480 U.S. 386 (1987), the Supreme Court considered whether release-dismissal agreements—in which the criminal defendant waived rights to all subsequent related civil claims—were *per se* invalid as a matter of public policy.  *Id*. at 392.  The Supreme Court declined to create a hard-and-fast rule, ultimately concluding on the facts before the Court that the agreement in question was enforceable. *Id*. at 398.  The Supreme Court thereby delegated the duty of determining the validity of such agreements to the district courts using a "case-by-case approach [to] appropriately balance[] the important interests on both sides of the question of the enforceability of these agreements . . . ." *Id*. at 399 (O'Connor, J., concurring in part and in the judgment).  Interpreting *Rumery*, the Sixth Circuit has held that a district court must make three determinations before enforcing a release-dismissal agreement:  "(1) the agreement was voluntary; (2) there was no evidence of prosecutorial misconduct; and (3) enforcement of the agreement will not adversely affect relevant public interests." *Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993).  "The burden of proving each of these points falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense." *Id*.

Frazier does not contest that she voluntarily entered into the relevant stipulation-dismissal agreement.  (Pl.'s Am. Resp. Defs.' Mot. Summ. J. 7).  Voluntariness alone, however, in insufficient to justify enforcement of a release-dismissal agreement. *See Cady v. Cty. of Arenac*, No. 07-11369, 2008 WL 1766676, at *6 (E.D. Mich. Apr. 15, 2008), *aff'd*, 574 F.3d 334 (6th Cir. 2009) ("His voluntary conduct, however, does not dispose of whether the deferred prosecution agreement was enforceable under *Rumery*.").

---

at *4 (W.D. Ky. Jan. 24, 2013) (equating probable cause stipulations and release-dismissal agreements for *Rumery-Coughlen* purposes).

The second element—the absence of prosecutorial misconduct—is somewhat impracticable to apply because it, in essence, asks Trulock and Henry to prove a negative. The Sixth Circuit has provided some helpful guidance: "[S]hould a court conclude that a prosecutor secured a release-dismissal bargain in the face of substantial evidence of police misconduct, the court could take this as evidence of prosecutorial misconduct . . . ." *Coughlen*, 5 F.3d at 974. On this point, Frazier has submitted the stipulation-dismissal agreement at issue in *Morrison v. Trulock*, 1:19-CV-00004-GNS, another civil action before this Court asserted by a former criminal defendant against the same police officers as in the case *sub judice*. (Pl.'s Mot. Am. Resp. Defs.' Mot. Summ. J. Ex. 2, DN 24-2). On September 17, 2018, the criminal defendant in that case agreed to stipulate to the existence of probable cause in exchange for the dismissal with prejudice of all counts against him. (Pl.'s Mot. Am. Resp. Defs.' Mot. Summ. J. Ex. 2). Importantly, that agreement noted that the dismissal with prejudice of all charges was "due to [a] pending federal investigation and [the] 5th Amendment privilege of [the] arresting officer in [a] related case." (Pl.'s Mot. Am. Resp. Defs.' Mot. Summ. J. Ex. 2).

Trulock and Henry note that the stipulation-dismissal agreement in the present case was entered into more than a year after the stipulation-dismissal agreement noted above and also correctly point out that there was no reference to the arresting officers' Fifth Amendment privilege or any federal investigation in Frazier's dismissal order. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D, DN 21-4). Otherwise, the stipulation-dismissal agreement at issue here is identical to the one in the other case. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. D; Defs.' Resp. Pl.'s Mot. Leave File Am. Resp. Defs.' Mot. Summ. J. 3). As in *Morrison*, without more information about the nature of the federal investigation and in the absence of testimony from the prosecutor about his or her knowledge, it is impossible to ascertain whether the prosecutor was aware of "substantial evidence

of police misconduct." This fact weighs against Trulock and Henry who have the burden both to

show both that they are entitled to summary judgment and that the stipulation-dismissal agreement

is valid.

Turning then to the third element—whether enforcement is adverse to the public interest—

"*Rumery* suggested that this standard can be satisfied if the prosecutor demonstrates that obtaining

the release was motivated by an independent, legitimate criminal justice objective." *Coughlen*, 5

F.3d at 975. This standard is not particularly burdensome:

> Examples of [] legitimate criminal justice objectives that come to mind are
> situations where the cost of prosecution would outweigh the benefit accruing to the
> public from a conviction; where the strength of evidence of criminal conduct is
> doubtful even though charges were filed in good faith; where witnesses or evidence
> are no longer available; where evidence is subsequently discovered that points to
> the criminal case defendant's innocence; or where criminal charges are not the
> product of prosecutorial misconduct and both sides benefit substantially from a
> balanced settlement in the sense that both avoid exposure to potential liabilities and
> expenses.

*Campbell v. Rodriguez*, No. 13-CV-14953, 2015 WL 3604858, at *5 (E.D. Mich. June 8, 2015)

(citation omitted). While Trulock and Henry have cited to this language, they have failed to proffer

any legitimate criminal justice objective. (Defs.' Resp. Pl.'s Mot. Leave File Am. Resp. Defs.'

Mot. Summ. J. 7-8). Without proof from the prosecutor regarding the intent behind the stipulation

and dismissal, Trulock and Henry could only speculate regarding its objective. Importantly, it is

Trulock and Henry's burden to convince the Court that the stipulation-dismissal agreements should

be enforced. They also *can* ascertain the intent of the prosecutor through deposition.[4] Without

---

[4] Testimony from the prosecutor could also shed further light on whether he or she was aware of
"substantial evidence" of police misconduct, thereby elucidating the second *Coughlen* element. It
could similarly provide further information about the frequency of Hart County's use of these
stipulation-dismissal agreements, which is another relevant but currently unclear fact. *See Hilfirty
v. Shipman*, 91 F.3d 573, 584 (3d Cir. 1996) (noting that *Rumery* "prevents prosecutors from
adopting a blanket policy of routinely obtaining in-court waivers or release-dismissal agreements

some evidence of the prosecutor's legitimate criminal justice objective, Trulock and Henry are not entitled to summary judgment based upon the agreements. *See Campbell*, 2015 WL 3604858, at *5 ("Defendants have not presented any evidence—such as an affidavit or testimony from the assigned prosecutor—as to what factors the prosecutor was considering when he negotiated the plea deal that included the Release. There simply is no evidence in this record that in this particular case, enforcement of the Release would not adversely affect the public interest or that obtaining the Release was motivated by a legitimate criminal justice objective."). On the present record, Movants have not established the absence of prosecutorial misconduct and the balance of public interests.

2.   *Qualified Immunity*

Trulock and Henry alternatively argue that regardless of the validity of the stipulation-dismissal agreement, they are entitled to qualified immunity based on the existence of an arrest warrant for Owens and a search warrant for Frazier's residence. (Defs.' Mem. Supp. Mot. Summ. J. 10-13). While state law determines whether Defendants are immune from state law claims, federal law determines whether Defendants are immune from federal law claims. *Funke*, 2013 WL 209602, at *2 (citations omitted); *see also Jefferson Cty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 836 (Ky. 2004) ("*Howlett* [*v. Rose*, 496 U.S. 356 (1990),] states clearly that state treatment of sovereign immunity is not relevant to a determination of whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue.").

Regarding Trulock and Henry's purported qualified immunity on Frazier's Section 1983 claims, "[q]ualified immunity shields government officials performing discretionary functions

_____

every time they agree to dismiss the charges against one defendant in the course of agreeing to a compromise with a co-defendant . . . ." (citation omitted)).

'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   As it pertains to Trulock and Henry's purported qualified immunity on Frazier's Kentucky state law claims, "[q]ualified immunity applies when public officials perform (1) discretionary acts, (2) in good faith, and (3) within their scope of authority." *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)).

Trulock and Henry contend they are entitled to qualified immunity on all claims in this case because they possessed a valid search warrant to enter Frazier's home and a valid arrest warrant to arrest Owens.  (Defs.' Mem. Supp. Mot. Summ. J. 10-15).   As Frazier points out, however, the validity of those warrants is the subject of an ongoing discovery dispute in a related case that has been consolidated with this one for the purposes of discovery.  (Pl.'s Am. Resp. Defs.' Mot. Summ. J. 3-5; *Owens v. Trulock*, No. 1:18-cv-00167-GNS, Pls.' Am. Mot. Lift Disc. Stay 2-4, DN 29; *Owens v. Trulock*, No. 1:18-cv-00167-GNS, Order 2, DN 39).   The validity of both warrants impacts Trulock and Henry's entitlement to qualified immunity on Frazier's Section 1983 and state law claims against them.  (Defs.' Mem. Supp. Mot. Summ. J. 15);  *see, e.g.*, *Barton*, 949 F.3d at 947-55 (finding officers were not entitled to qualified immunity on plaintiff's Section 1983 Fourth Amendment and excessive force claims based on police officer conduct during warrantless search and arrest); *Dunn*, 2005 WL 736596, at *2 ("In an action for false arrest or for assault and battery arising in the course thereof, the focus is on whether the police officer had reasonable grounds to believe and did believe in good faith that the plaintiff had committed an arrestable offense, and whether the officer used excessive force in making the arrest."  (citing *City of*

*Lexington v. Gray*, 499 S.W.2d 72, 756 (Ky. 1972))).  As such, this factual dispute precludes the application of the qualified immunity doctrine to protect Trulock and Henry at this time.

As for Frazier's state law claims, even assuming the search and arrest warrants were valid, an "officer is liable for false arrest and battery if he lacked reasonable grounds for the arrest, or if the officer had a reasonable basis for the arrest but used more force than was necessary." *Id.* (citing *Lexington-Fayette Urban Cty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. App. 1977)).  On this point, Trulock and Henry cite to KRS 503.090(1), which allows officers to use physical force in effecting an arrest, but still requires an officer to act in good faith when doing so.  *See Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 31 (Ky. App. 2016) ("[W]e find no error in the circuit court's determination that [Officer] was entitled to defend against [Plaintiff's] claims of negligence, assault, battery, [and] false imprisonment . . . on the basis of qualified immunity [because] Smith's arguments on appeal (as they were below) are not directed toward whether the actions Phillips took in the course and scope of his authority as a peace officer were indicative of bad faith." (citing *Dunn*, 2005 WL 736596, at *2)).  Whether Trulock and Henry acted in good faith in arresting Frazier and using only necessary force remain factual issues that are improper for summary judgment at this time.[5]

---

[5] As a final matter, although Trulock and Henry initially argued that Frazier's guilty plea precluded her assertion of claims based on the non-existence of probable cause, Trulock and Henry did not further that contention in reply to Frazier's response that the conviction was vacated.  (Defs.' Mem. Supp. Mot. Summ. J. 2-5).  Trulock and Henry appear to have rightfully abandoned this argument, as no part of a vacated conviction can act to preclude a plaintiff from asserting claims predicated on the non-existence of probable cause.  *See Spurlock v. Whitley*, 971 F. Supp. 1166, 1176-77 (M.D. Tenn. 1997) ("[T]he vacating of Plaintiff['s] . . . conviction prevents Defendants from using his guilty plea to preclude his subsequent civil claims.").

### 3.   *Fifth, Eighth, and Fourteenth Amendments*

Trulock and Henry further assert that three constitutional provisions—the Fifth Amendment's Due Process Clause, the Eighth Amendment's Cruel and Unusual Punishment Clause, and the Fourteenth Amendment's Due Process Clause—cannot form the basis for some of Plaintiffs' claims, and, that such claims should be dismissed. (Defs.' Mem. Supp. Mot. Summ. J. 6-10). Frazier actually concedes Trulock and Henry's contentions with regard to the Fifth and Eighth Amendments, but not with regard to the Fourteenth Amendment. (Pls.' Am. Resp. Defs.' Mot. Summ. J. 15-20). To the extent Frazier bases any of her claims on purported violations of the Fifth and Eighth Amendment, those claims will be dismissed.[6]

Trulock and Henry argue that the Fourteenth Amendment's Due Process Clause cannot form the basis for Frazier's Section 1983 claims based on excessive force and unreasonable search and seizure. (Defs.' Mem. Supp. Mot. Summ. J. 7-9). First, regarding Frazier's Section 1983 excessive force claims, "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged

---

[6] Trulock and Henry correctly argue that the Fifth Amendment's Due Process Clause cannot form the basis for any of Plaintiff's Section 1983 claims because Trulock and Henry are not federal employees or agents and the Fifth Amendment's Due Process Clause does not apply to the actions of non-federal employees or agents. *See Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (Because "the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government[,] . . . the instant complainant's citation to the Fifth Amendment Due Process Clause [as the basis for a Section 1983 claim] was a nullity . . . ."). Trulock and Henry also correctly assert that a Section 1983 claim cannot be based on the Eighth Amendment's Cruel and Unusual Punishment Clause because that clause applies only to prisoners incarcerated after a criminal conviction and the acts Frazier bases her claims on occurred before she became an incarcerated convict. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. 23; Notice Removal Ex. 1, at 4-15); *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt . . . ." (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977))).

application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation omitted).  As the

Sixth Circuit has explained:

> The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that "arise[] in the context of an arrest or investigatory stop of a free citizen," while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences.  When neither the Fourth nor the Eight Amendment serves to protect citizens, courts have applied the Fourteenth Amendment. . . .  [W]hich amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between.

*Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (internal citations omitted) (citation omitted).

This Court has also stated:

> The scope of Fourth Amendment protection depends in part on whether the individual was arrested pursuant to a warrant or not.  Concerning the latter, the Fourth Amendment "protects pre-trial detainees arrested without a warrant through completion of their probable cause hearing."  As to those arrested pursuant to a warrant, the breadth of [the] Fourth Amendment's protection is reduced and only lasts during the actual seizure of the individual."[7]

*Scherzinger v. Bolton*, No. 3:11-CV-11-H, 2013 WL 3166163, at *4 (W.D. Ky. June 20, 2013)

(internal citation omitted) (citing *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002)).

Regarding Frazier's Section 1983 unreasonable search and seizure claims, "reliance on the

Due Process Clause is misplaced . . . because it is the Fourth Amendment which establishes

procedural protections in this part of the criminal justice area."  *See Huston v. Felder*, No. 5:07-

183-JMH, 2008 WL 4186893, at *4 (E.D. Ky. Sept. 10, 2008) (dismissing Section 1983 claim

---

[7] This discussion is largely semantic after the U.S. Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015), holding that the appropriate standard for reviewing a pretrial detainee's Fourteenth Amendment excessive force claim is simply objective reasonableness.  "Since *Kingsley*[,] . . . whether the Fourth or Fourteenth Amendment standard applies presents less of a problem in cases" since objective reasonableness is the hallmark of a Fourth Amendment excessive force claim, as well.  *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 70 (1st Cir. 2016).

alleging violation of Fourteenth Amendment's Due Process Clause based on an unreasonable search and seizure for lack of probable cause because Fourth Amendment governs claim instead (citation omitted)); *see also Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907, 921 (E.D. Tenn. 2010) ("Where a plaintiff's claims under the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged wrongful search or seizure, it is appropriate to analyze such claims under the reasonableness standard of the Fourth Amendment instead of an analysis of substantive due process rights." (citations omitted)); *see generally Manuel v. City of Joliet*, 137 S. Ct. 911, 919 (2017) (discussing application of Fourth Amendment to plaintiff's claim for allegedly unlawful arrest without probable cause).

The only specific acts articulated by Frazier as giving rise to a Section 1983 excessive force or unreasonable search and seizure claim under a constitutional amendment other than the Fourth Amendment are:  the destruction of the video Frazier took of the officers; Frazier being subjected to a urine test and an allegedly unlawful interrogation at the police station; and Frazier being subjected to the viewing of officers' physical and verbal abuse of Bryant at the police station. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. 15-20; Notice Removal Ex. 1, ¶¶ 25-42).  However, Frazier has not identified Trulock and Henry as having any involvement in the taking of her urine, her interrogation, or in forcing her to watch the physical and verbal abuse of Bryant at the police station.  Rather, Frazier has identified Defendant Larry Dale Martin ("Martin"), an officer with the Horse Cave Police Department, as the only individual having any involvement with these acts. (Notice Removal Ex. 1, ¶¶ 36-43; Pl.'s Am. Resp. Defs.' Mot. Summ. J. 3).  In other words, Frazier has not identified any link between these acts and Trulock and Henry.

The only act that Frazier alleges that actually involves Trulock and Henry—their destruction of Frazier's video—Frazier attempts to assert a Fourteenth Amendment claim

stemming from that act, notably, one grounded in *procedural* due process.  (Notice Removal Ex. 1, ¶¶ 25-28, 60-61; Pl.'s Am. Resp. Defs.' Mot. Summ. J. 17).  "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of *substantive* due process' must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (emphasis added) (internal citations omitted) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  "The destruction of property is a 'meaningful interference' with personal property and constitutes a seizure within the meaning of the Fourth Amendment."  *Spangler v. Wenninger*, 388 F. App'x 507, 511 (6th Cir. 2010) (citation omitted). Because the Fourth Amendment can be the basis of Frazier's destruction of property claim, had Frazier asserted a substantive due process claim for the same act that claim would be dismissed. *See Cane v. New Britain Police Dep't*, No. 3:16-cv-1638 (SRU), 2017 WL 752278, at *4 (D. Conn. Feb. 27, 2017) ("[Plaintiff's] claims[] of . . . destruction of property in connection with the illegal entry onto his property [is] covered by the Fourth Amendment's protections against unlawful searches and seizure.  Therefore, [Plaintiff] cannot . . . allege those same injuries as violations of his Fourteenth Amendment substantive due process rights."  (citations omitted)).

However, Frazier is claiming a *procedural* due process destruction of property claim in conjunction with a Fourth Amendment destruction of property claim.  *Compare Brandon v. Vill. of Maywood*, 157 F. Supp. 2d 917, 930 (N.D. Ill. 2001) (procedural due process claim for destruction of property during arrest "is more appropriately characterized under the Fourth Amendment as one for an unreasonable seizure of her personal effects."  (citations omitted)), *with Gilmore v. Dubuc*, No. 13-1019 (JRT/FLN), 2015 WL 3645846, at *1 (D. Minn. June 10, 2015) ("[T]he two primary types of constitutional property claims a plaintiff [whose property has been

destroyed by law enforcement]. . . can bring . . . [include] a Fourth Amendment claim, challenging the seizure of property, or a Fourteenth Amendment due process claim, challenging the deprivation of property without due process." (citing *Powell v. Johnson*, 855 F. Supp. 2d 871, 873-74 (D. Minn. 2012))). Trulock and Henry did not rebut in their reply Frazier's assertion of a procedural due process claim. (Defs.' Mem. Supp. Mot. Summ. J. 7-9).

In summary, to the extent Frazier relies on the Fourteenth Amendment's Due Process Clause as a basis for asserting Section 1983 excessive force and unreasonable search and seizure claims that are more appropriately analyzed under the Fourth Amendment, summary judgment in Trulock and Henry's favor will be granted and those claims will be dismissed, except for Frazier's procedural due process claim for the destruction of her video which will survive. Although Frazier has generally asserted that Trulock and Henry's motion for summary judgment is improper at this time because discovery is still ongoing, Frazier has not even hinted at any other allegations of excessive force or unreasonable search and seizure arising outside the context of the Fourth Amendment that would arise from further discovery. (Pl.'s Am. Resp. Defs.' Mot. Summ. J. 6-7); *see Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) ("It is not an abuse of discretion for the district court to deny [a] discovery request when [a] party 'makes only general and conclusory statements . . . regarding the need for more discovery" or when the request "lacks 'any details' or 'specificity.'" (citations omitted)).

Regardless, Frazier has identified the Fourth Amendment as a basis for her Section 1983 claims based on unlawful search and seizure and excessive force. (Notice Removal Ex. 1, ¶¶ 60, 62-63, 81). Although Trulock and Henry correctly assert that Frazier cannot base some of her Section 1983 claims for violations of some of the constitutional provisions she identifies, Trulock

and Henry do not make arguments dispelling *all* of the constitutional provisions cited by Frazier. Therefore, Frazier's Section 1983 claims will not be dismissed in their entirety.

## V.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.     Defendants Chris Trulock and Sean Henry's Motion for Summary Judgment (DN 18) is **GRANTED IN PART** and **DENIED IN PART**. All of Plaintiff's claims against Trulock and Henry in their official capacities are **DISMISSED WITH PREJUDICE**. All of Plaintiff's claims against Trulock and Henry in their individual capacities premised on the Fifth and Eighth Amendments are **DISMISSED WITH PREJUDICE**. Plaintiff's excessive force and unlawful search and seizure claims against Trulock and Henry premised on the Fourteenth Amendment are **DISMISSED**, except for Frazier's procedural due process claim based on the destruction of her video. All other claims survive.

2.     Plaintiff's Motion to Amend Response to Defendants' Motion for Summary Judgment (DN 24) is **GRANTED**.

Greg N. Stivers, Chief Judge

United States District Court

May 6, 2020

cc:     counsel of record